**Steven L. WALKER, a minor, by and through his next friend, natural guardian and legal guardian, his mother, Ann Walker Reisman, and Ann Walker Reisman, individually, Plaintiffs,**

v.

**Ralph J. GRANT and American Mutual Insurance Company of Boston, Defendants.**

**No. 68-1280-Civ-CA.**

United States District Court,
S. D. Florida,
Miami Division.

June 17, 1970.

R. Regis Reasbeck, of Reasbeck & Fegers, Hollywood, Fla., for plaintiffs.

Gobel D. Dean, of Dean, Adams, George & Wood, Miami, Fla., for defendants.

## MEMORANDUM OPINION

ATKINS, District Judge.

What are the responsibilities of a driver backing his automobile, which had been parked at a 39 degree angle around the inner circumference of a circle, into a lane of traffic at night where the area is well lighted? The answer to this question resolves the issue of liability as between the defendant Ralph J. Grant, the owner and operator of an Oldsmobile sedan, and the plaintiff Stev-

en L. Walker, the owner and operator of a Honda motorcycle, involved in an accident which occurred on December 11, 1966 about 7:50 p.m. in Young's Circle at Hollywood, Florida. On the Circle in question the angular parking spaces were surrounded by three traffic lanes. The Honda was proceeding counterclockwise in the center of the lane nearest the parking area. Its speed was well within the maximum of the 25 mph. The lights on the motorcycle were burning.

Defendant Grant testified that he turned his lights on and started his motor. He then looked back and to his left. There was a car parked, according to him, in the parking space immediately adjacent on the left. Directing his vision thru the rear window, as well as to the left and over his right shoulder, Grant slowly backed into the lane which embraced the circle. His backing was cautious, he said. He had traveled the circle and parked on the inner circumference a number of times previously.

Admittedly, Grant never saw or heard the approach of the Honda. There was credible evidence that the angular parking on the inner circumference of the circle created a special hazard. Particularly when a car was parked in an adjacent space, the vision of the "backing" driver was impaired. This was compounded by the circular direction of the roadway on which approaching traffic would operate. There was testimony proffered that the driver of the Honda should be able to see the backing vehicle before the latter could see the motorcycle.

The duty of a backing driver on a State Road (as this was) is delineated by Florida Statutes, 1967, § 317.731, F. S.A. It required that such operation must not be done unless it can be made "with safety and without interfering with other traffic." In amplification, this driver must exercise every "means at his hand to protect life and property of others that may be in his path." Green v. Atlantic Co., (Fla.1952), 61 So.2d 185, 186. In fine, it is that operator's duty to apprise the approaching vehicle of the contemplated entry and to see, and to yield to, any vehicle so near as to constitute a hazard as the backing automobile moves into the traveled way. Special hazards to vision only enhance that duty.

At the close of this non jury trial, I resolved the issue of liability against the defendant Grant. Thus, there remains only the issue of damages sought by the injured plaintiff, who is now 21, and his mother, who was awarded his custody in earlier divorce proceedings. During a substantial part of the time since the injury, Steven has been confined in a state institution for convictions of possession of marihuana.

Steven Walker sustained a compound commuted fracture of the left tibia and fibula. One of the two (there are normally three) arteries in the leg was severed. Repair procedures, complicated by the absence of the perineal artery, were abortive. Several separate hospital confinements totalling 129 days were required. Psychiatric treatment was necessary. Osteomalitis developed at the injury site. The leg is now one and one-half inches shorter than the right. Steven limps and complains that the leg hurts continuously. His treating physician and surgeon, Dr. Harry B. Orringer, found on April 17, 1970 a nonunion at the junction of the middle and lower thirds of the left tibia. The Court-appointed physician, Dr. Harry Beller, found that this leg is useless and must be amputated below the knee and a prosthesis supplied. This will result in a functional extremity for practical purposes. He assigned a 35% permanent partial disability of the body as a whole and 90% loss of the left leg. The total medical and related expenses to date are $18,128.40. The amputation and prosthesis will cost between $2500 and $3000.

The injured plaintiff was not living with his mother at the time of the injury. He had moved out following an altercation with his step-father. From

the time he was 14 there had been bitter disputes with his real father (from whom his mother was subsequently divorced) resulting in his exhibiting hostility toward that parent. He manifested personality problems and anti-social behavior before the subject accident.

The plaintiff Steven Walker's greatest need, aside from the leg operation, is motivation. He has the mental capacity to develop skills in an occupation which would not require full physical capabilities in the left leg. He cannot perform heavy manual labor.

The Court has assumed that the plaintiff mother, Ann Walker Reisman, has paid or incurred obligation to pay the medical and related expense involved. Accordingly, she is awarded Twenty Thousand Dollars ($20,000.00) to effect that reimbursement and payment of damages for any nursing care, loss of companionship, and loss of earnings during Steven's minority. The plaintiff Steven L. Walker is awarded Eighty Thousand Dollars ($80,000.00) for all recoverable losses of any kind, including but not limited to (a) past and future loss of earnings, (b) mental anguish and pain and suffering, and (c) future medical, hospital and prosthesis expenses.